UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGORY J. SLABAUGH,<br><br>Plaintiff,<br><br>v.<br><br>CHURCHILL CAPITAL CORPORATION IV, ATIEVA, INC. d/b/a LUCID MOTORS, MICHAEL KLEIN, JAY TARAGIN, and PETER RAWLINSON,<br><br>Defendants. | CIVIL COMPLAINT<br><br>CASE NO. 1:21-cv-01652<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes GREGORY J. SLABAUGH ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CHUCHILL CAPITAL CORPORATION IV ("CCIV" or "Company"), ATIEVA, INC. d/b/a LUCID MOTORS ("Lucid"), MICHAEL KLEIN ("Klein"), JAY TARAGIN ("Taragin"), and PETER RAWLINSON ("Rawlinson") (collectively "Defendants"), alleging the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding CCIV and Lucid as well as analysts' reports and advisories about the companies and their pending merger, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

#### NATURE OF THE ACTION AND OVERVIEW

1. Plaintiff brings this action under the Securities Exchange Act of 1934 (the "Exchange Act"). Specifically, Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

#### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the Exchange Act. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as Defendants conduct business in the Southern District of Indiana and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Indiana.

4. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

#### PARTIES

5. Plaintiff Gregory Slabaugh is a resident of Carmel, Indiana who purchased CCIV securities on a number of occasions throughout January and February 2021, and has been damaged as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

6. CCIV is a blank check company, also known as a special purpose acquisition company ("SPAC"). A SPAC is a company that you can buy stock in that does not have an underlying

business. SPACs raise money that's then used to buy a private company, effectively taking that company public while avoiding the traditional IPO process. CCIV was formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. CCIV is a "shell company" as defined under the Exchange Act because it has no operations and nominal assets consisting almost entirely of cash. CCIV' executive offices are located at 640 Fifth Avenue, 12th Floor, New York, NY 10019.

7. Lucid is an American automotive company specializing in electric cars. The company was founded in 2007 by CEO Peter Rawlinson, and is based in Newark, California.

8. Defendant Klein is the Founder, Chairman, CEO, and director of CCIV. He is also the founder and managing partner of M. Klein and Company, which he founded in 2012. In April 2020, Klein launched CCIV, which raised $2,070,000,000 billion in its IPO and is listed on the New York Stock Exchange (NYSE: "CCIV").

9. Defendant Taragin is CCIV's Chief Financial Officer. On February 22, 2021, Taragin signed off on the Agreement and Plan of Merger by and among CCIV and Lucid. Taragin also signed the Company's Annual Form 10-K report for the fiscal year ended December 31, 2020 filed on March 15, 2020 ("FY 2020 10-K") as the Company's Chief Financial Officer.

10. Defendant Rawlinson is Lucid's Chief Executive Officer. Lucid is an American automotive company specializing in electric cars. The company was founded in 2007, and is based in Newark, California. As of 2020, its first car, Lucid Air, is in development. On February 22, 2021, Rawlinson signed the Agreement and Plan of Merger by and among CCIV and Lucid.

11. Defendants Klein, Taragin, and Rawlinson are collectively referred to herein as the "Individual Defendants."

12. The Individual Defendants, because of their positions within CCIV and Lucid, controlled and/or possessed the authority to control the contents of its reports, press releases, and presentations to securities analysts and through them, to the investing public. By reason of their management positions and their ability to make public statements in the name of CCIV and Lucid, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) CCIV and Lucid to engage in the conduct complained of herein.

**SUBSTANTIVE ALLEGATIONS**

**MATERIALLY FALSE & MISLEADING STATEMENTS**

13. At market close on Friday, January 8, 2021, CCIV was trading at $10.03 a share. On January 11, 2021, Bloomberg News reported the following:

> Electric vehicle maker Lucid Motors Inc. is in talks to go public through a merger with one of Michael Klein's special purpose acquisition companies, according to people familiar with the matter. A transaction could be valued at up to $15 billion, the people said, asking not to be identified because the matter is private. Lucid, which is backed by Saudi Arabia's sovereign wealth fund, is working with financial advisers, the people added. The talks are ongoing but could still fall apart. Representatives for Lucid Motors and Klein declined to comment. A former Citigroup Inc. rainmaker, Klein has two SPACs that are on the hunt for deals. Churchill Capital Corp IV – the largest one, having raised more than $2 billion last year – is the vehicle considering a deal with Lucid, some of the people said. Klein has played a prominent role in guiding the kingdom's investments, serving as an adviser to its Public Investment Fund. Among other deals, he advised on the Saudi Aramco initial public offering. Churchill Capital Corp IV jumped as much as 40% in New York trading Monday."[1]

14. At the close of business on January 11, 2021, CCIV's share price was $13.20.

15. Plaintiff purchased 10 shares of CCIV stock on January 15, 2021.

---

[1] https://www.bloomberg.com/news/articles/2021-01-11/lucid-motors-said-to-be-in-talks-to-list-via-michael-klein-spac

16. By January 22, 2021, the price per share of CCIV had risen to $22.35 due to leaks and rumors regarding a pending merger with Lucid.[2] Writers from various news organizations reported that a deal was near completion, and that a merger was imminent.

17. Plaintiff purchase 10 shares of CCIV stock on each of the following dates: January 25, 2021, January 28, 2021, February 1, 2021, and February 3, 2021.

18. On February 4, 2021, Rawlinson told Forbes Magazine the following:

> Rawlinson wants to make at least 6,000 Airs at a new plant in Casa Grande, Arizona, this year, potentially generating $900 million of revenue. Volume cold top 25,000 units in 2022 as versions of Air priced at $77,000 arrive. Further growth is expected with the 2023 introduction of an electric crossover, tentatively named Gravity, followed by even cheaper and smaller models to compete with Tesla's top-selling Model 3.[3]

19. On February 4, 2021, CCIV's shares closed at $30.22.

20. On February 5, 2021, Lucid's CEO, Rawlinson, appeared on CNBC Friday morning with Jim Cramer and David Faber, sharing his thoughts on his company, plans for growth, the electric vehicle market, and rumors of a SPAC deal.[4] CCIV's shares closed at $34.65 after Rawlinson's comments.

21. Plaintiff purchased another 50 shares of CCIV stock on February 5, 2021.

22. On February 16, 2021, Rawlinson appeared on Fox Business News with Neil Cavuto touting that Lucid was aiming for a spring delivery of its first vehicles.[5] In the interview, no mention was made of any impediments to the stated deliver time-frame. At the end of this same day, CCIV's stock price closed at $52.70.

---

[2] https://investorplace.com/2021/01/cciv-stock-lucid-motors-spac-merger-rumors-send-churchill-capital-climbing-again/
[3] https://www.forbes.com/sites/alanohnsman/2021/02/04/elon-musks-ex-chief-engineer-creates-anew-car-and-says-it-beats-tesla/?sh=262bc0f05b2e
[4] https://www.cnbc.com/video/2021/02/05/watch-cnbcs-full-interview-with-lucid-motorsceo-peter-rawlinson.html
[5] https://video.foxbusiness.com/v/6232730504001#sp=show-clips

23. By Thursday, February 19, 2021, CCIV's stock price reached an all-time high of $58.05.

24. On Monday, February 22, 2021, the long anticipated merger agreement between CCIV and Lucid was announced. CCIV's and Lucid's transaction equity value was estimated at $11.75 billion. CCIV's share price then closed at $57.37.

25. Throughout the time the above conduct was engaged in by Defendants, Plaintiff purchased CCIV securities on a number of occasions throughout January and February 2021, and the decisions made relative to holding his position were directly impacted by the actions and/or omissions of Defendants.

## THE TRUTH EMERGES

26. At 6:22 p.m. on February 22, 2021, Ed Ludlow of Bloomberg News reported that Rawlinson announced that production of its debut car will be delayed until at least the second half of 2021, with no definite date set for actual delivery of an actual vehicle.[6]

27. Details of the merger also disclosed that Lucid was projecting the production of only 557 vehicles in 2021, instead of the 6,000 it had been touting in the run-up to the merger announcement.[7]

28. Between the January 11, 2021 Bloomberg article and the official announcement of the merger on February 22, 2021, CCIV stock rocketed from $10 to $57, or 470%.

29. On February 23, 2021, following the merger and never before revealed information from Rawlinson, the stock plummeted to $35.21, a 38% decline. As of May 21, 2021, CCIV was trading at $19.78 – and analysts have suggested that CCIV remains overvalued even after its precipitous decline.

## UNDISCLOSED ADVERSE FACTS

---

[6] https://twitter.com/EdLudlow/status/1364216096249630720
[7] https://www.lucidmotors.com/investors/

30. The market for CCIV's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, CCIV's securities traded at artificially inflated prices. Plaintiff purchased or otherwise acquired CCIV's securities relying upon the integrity of the market prices of the Company's securities and market information relating to CCIV, and has been damaged thereby.

31. Defendants materially misled the investing public, thereby inflating the price of CCIV's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about CCIV's business, operations, and prospects as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff. As described herein, Defendants made or caused to be made a series of materially false and/or misleading statements about CCIV's and/or Lucid's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements resulted in Plaintiff purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the loss suffered by Plaintiff.

34. Plaintiff purchased the Company's securities at artificially inflated prices and was damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed.

35. The timing and magnitude of the common stock and warrant prices decline negates any inference that the loss suffered by Plaintiff was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the fraudulent conduct. The economic loss – i.e., damages – suffered by Plaintiff was a direct result of the fraudulent scheme to artificially inflate the Company's common stock and warrant prices and the subsequent significant decline in the value of the Company's common stock and warrants when the prior misrepresentations and other fraudulent conduct were revealed.

### SCIENTER ALLEGATIONS

36. As alleged herein, Defendants acted with scienter since Defendants knew that the public statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

37. The Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of

time without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants .

38. The Individual Defendants were motivated to materially misrepresent the true nature of the Company's business, operations, and financial affairs to the public and regulators in order to keep the Company's share price artificially high.

### APPLICABILITY OF PRESUMPTION OF RELIANCE

39. The market for CCIV's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, CCIV's securities traded at artificially inflated prices at the time Plaintiff purchased such securities. Plaintiff purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of CCIV's securities and market information relating to CCIV, and has been damaged thereby.

40. The artificial inflation of CCIV's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Plaintiff. As described herein, Defendants made or caused to be made a series of materially false and/or misleading statements about CCIV's and/or Lucid's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of CCIV and its business, operations and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements resulted in Plaintiff purchasing the Company's securities at such artificially inflated prices, damaging Plaintiff in the process.

41. At all relevant times, the market for CCIV's securities was an efficient market for the following reasons, among others:

    a. Defendants made public misrepresentations or failed to disclose material facts during the relevant time period;

    b. The omissions and misrepresentations were material;

    c. CCIV securities are traded in an efficient market;

    d. CCIV's shares were liquid and traded with moderate to heavy volume during the relevant time period;

    e. CCIV traded on the NASDAQ and was covered by multiple analysts;

    f. The misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and,

    g. Plaintiff purchased, acquired, and/or sold CCIV securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

## NO SAFE HARBOR

42. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements plead in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of CCIV and/or Lucid who knew that the statement was false when made.

**COUNT I – VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT
AND RULE 10B-5 PROMULGATED THEREUNDER**
AGAINST ALL DEFENDANTS

43. Plaintiff repeats and realleges each and every allegations contained above as if fully set forth herein.

44. At all relevant times, Defendants carried out a plan, scheme, and course of conduct which was intended to, and did: (i) deceive the investing public, including Plaintiff, as alleged herein; and (ii) caused Plaintiff to purchase CCIV's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45. Defendants (i) employed devices, schemes, and artifice to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for CCIV's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about CCIV's and/or Lucid's financial well-being and prospects, as specified herein.

47. Plaintiff has suffered damages in that, in reliance on the integrity of the market, he paid artificially inflated prices for the Company's shares. Plaintiff would not have purchased the Company's shares at the price paid, or perhaps at all, if he had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### COUNT II – VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
#### AGAINST THE INDIVIDUAL DEFENDANT

48. Plaintiff repeats and realleges each and every allegations contained above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above that contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or cause them to be corrected so as not to be misleading, yet failed to do so.

50. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchases of the Company's securities at artificially inflated prices.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Awarding compensatory damages in favor of Plaintiff against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(b) Awarding Plaintiff his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and,

(c) Such other and further relief as the Court may deem just and proper.

Dated: June 11, 2021

Respectfully submitted,

s/ Nathan C. Volheim (Lead Attorney)
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

s/ Eric D. Coleman
Eric D. Coleman, Esq. # 6326734
Counsel for Plaintiff
Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(331) 307-7648 (phone)
(630) 575-8188 (fax)
ecoleman@sulaimanlaw.com